No. 19-70297
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
_____

International Longshore and Warehouse Union and International Longshore and Warehouse Union, Local 4,

*Petitioners*,

v.

National Labor Relations Board,

*Respondent*.

On Appeal from Decision and Order of the National Labor Relations Board
Case Nos. 19-CC-092816, 19-CC-115273, 19-CD-092820, and 19-CD 115274

**MOTION FOR LEAVE TO INTERVENE AS RESPONDENT
BY KINDER MORGAN TERMINALS**

David L. Schenberg
Timothy A. Garnett
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
7700 Bonhomme Ave., Ste. 650
St. Louis, MO 63105
Tel: 314.802.3935
Fax: 314.802.3936
David.schenberg@ogletree.com
Timothy.garnett@ogletree.com

Pursuant to Federal Rule of Appellate Procedure 15(d) and, alternatively, Federal Rule of Civil Procedure 24, Kinder Morgan Terminals (Kinder Morgan) timely moves to intervene as respondent in this action. Kinder Morgan has a direct and substantial interest in this case, where the underlying question is which union's workers shall perform electrical maintenance and repair work for Kinder Morgan at the facility it operates in Vancouver, Washington (the Work). The relief ordered in the appealed-from NLRB decision directly impacts Petitioners' right to engage in activity directed toward Kinder Morgan. Moreover, the key triggering events in this case consist of Petitioners' coercive pursuit of the Work through grievances filed against Kinder Morgan that complain the Work should be performed by Petitioners' members and not by the International Brotherhood of Electrical Workers, Local 48 (IBEW).

## BACKGROUND

Kinder Morgan has operated a cargo-handling terminal facility at the Vancouver Bulk Terminal (VBT) in Vancouver, Washington for more than twenty years. *Int'l Longshore and Warehouse Union*, Local 4, 267 NLRB No. 64 (Jan. 31, 2019). As set forth in the Board Decision on appeal, "[s]ince beginning operations at the VBT, Kinder Morgan has utilized its own workers represented by ILWU to perform the mechanical maintenance and repair (M&R) work at the facility. However, it has always used a vendor to perform its electrical M&R work on an as-

needed basis. These vendors have been local electrical contractors whose workers are represented by IBEW." *Id.* at 1. In 2011, the Board determined a jurisdictional dispute over the Work, between ILWU and IBEW, holding among other things, that "[i]t is undisputed that Kinder Morgan prefers that the work in question be performed by IBEW-represented employees." See *Int'l Bhd. of Electrical Workers, Local 48*, 357 NLRB 2217, 2220 (Dec. 31, 2011).

Both the 2011 Decision and the 2019 Decision now at issue were precipitated in 2010, when Petitioners filed six lost-wage grievances against Kinder Morgan alleging the Work should have been performed by their members. *Int'l Longshore and Warehouse Union, Local 4*, 367 NLRB No. 64, at p.2. As a result of the grievances filed by Petitioners, IBEW became concerned that Kinder Morgan might be prompted to move the work from its members to Petitioners' members. IBEW accordingly sent two letters to Kinder Morgan threatening action against Kinder Morgan if it moved the work to Petitioners. *Int'l Bhd. of Electrical Workers, Local 48 (Kinder Morgan Terminals)*, 357 NLRB at 2218. Although Kinder Morgan preferred to continue having IBEW members perform the Work, it filed an unfair labor practice charge against IBEW over the letters. *Id.* at 2217. The matter was treated as a jurisdictional dispute between two sets of workers under Section 10(k) of the National Labor Relations Act, and Petitioners became party to the matter by intervening in it. See *Int'l Longshore and Warehouse Union*, Local 4, 267 NLRB

3

No. 64, p. 3. On December 31, 2011, the National Labor Relations Board decided the jurisdictional dispute, finding the Work belonged to the IBEW and not to Petitioners (2011 Decision). *See Int'l Bhd. of Electrical Workers, Local 48 (Kinder Morgan Terminals)*, 357 NLRB 2217.

In the meantime, Petitioners' six 2010 grievances went through a separate arbitration process pursuant to Kinder Morgan's multi-employer association contract. *See Int'l Longshore and Warehouse Union*, Local 4, 267 NLRB No. 64, p. 1. Petitioners lost in May 2010 an Area Arbitration decision, with the Area Arbitrator concluding a past practice exemption rendered the Work outside any contract requirement that it be performed by Petitioners. *Id.* at pp. 1, 2. That decision, however, was vacated by the Coast Arbitrator on December 28, 2011, who referred the matter back to the original Area Arbitrator. *Id*.

When the Board's 2011 Decision issued on December 31, 2011, Petitioners did not withdraw the grievances or end the arbitration process. The Area Arbitrator later concluded Kinder Morgan could not outsource the Work to IBEW members under the contract. *Int'l Longshore and Warehouse Union*, Local 4, 267 NLRB No. 64, p. 2. The Area Arbitrator referred the issue of implementing her decision to a committee composed of representatives from Petitioners and the multi-employer association. *Id.* When Kinder Morgan continued to use IBEW workers for the Work,

4

on several occasions Petitioners' members physically interfered and prevented IBEW members from doing the work Kinder Morgan requested. *Id.*

The underlying complaint alleges that Petitioners' conduct after the 2011 Decision (including continued pursuit of the grievances against Kinder Morgan, physically interfering with IBEW's performance of the Work, and pressuring Kinder Morgan to prepare an electrician job description to be posed at Petitioners' hiring hall) was unlawfully coercive. *Int'l Longshore and Warehouse Union*, Local 4, 267 NLRB No. 64, p. 2. The ALJ, however, found that the General Counsel failed to prove Petitioners' conduct was unlawful. Instead, the ALJ found Petitioners' conduct was primary work preservation activity aimed at compelling Kinder Morgan to assign the Work to its members as required by the contract. *Id.* at pp. 2-3. Although the ALJ recognized his decision to treat Petitioners' conduct as aimed at work preservation put the decision at odds with the Board's 2011 Decision that the work belonged to IBEW, he determined he was entitled to reconsider its conclusion.

The matter then proceeded to the National Labor Relations Board. It is the Board's 2019 Decision that is now before this Court. In its 2019 Decision, the Board held that its 2011 Decision was dispositive of whether Petitioners had a valid work preservation objection, and that Petitioners could not relitigate the Board's 2011 conclusion that the Work belonged to IBEW. *Int'l Longshore and Warehouse Union*, Local 4, 267 NLRB No. 64, p. 3. The Board further held that, even if the issues could

have been relitigated, the findings by the ALJ underlying his decision lacked a sound basis. *Id.* at p. 4. Because the 2011 Decision disposed of the possibility that Petitioners had a valid work preservation objective, the Board further found merit in the allegations that Petitioners had violated the Act by continuing to pursue the grievances and by engaging in other coercive activity designed to obtain the Work from Kinder Morgan. *Id*. at p. 5.

## ARGUMENT

A. Federal Rule of Appellate Procedure 15(d) provides interested persons may intervene in the Court of Appeals when an agency order is being reviewed pursuant to Rule 15(a).

Federal Rule of Appellate Procedure 15(d) explicitly provides for appellate intervention by interested non-parties in cases, like this one, involving direct appellate review of an agency order under Rule 15(a). Fed. R. App. P. 15(d); *Local Joint Exec. Bd. of Las Vegas v. Nat'l Labor Relations Bd.*, 883 F.3d 1129, 1132 n. 1 (9th Cir. 2018). All Rule 15(d) requires is that the motion for leave to intervene "must be filed within 30 days after the petition for review is filed and must contain a concise statement of the interest of the moving party and the grounds for intervention." Fed. R. App. P. 15(d).[1]

---

[1] This motion is timely filed within 30 days of Petitioners' Petition for Review of Decision and Order of the National Labor Relations Board, filed February 1, 2019.

The Courts of Appeals have thus granted intervention motions pursuant to Rule 15(d) to those "whose legal interests are at stake" or who have a "substantial interest" in the outcome of the appeal. *See Sierra Club, Inc. v. Envtl. Prot. Agency*, 358 F.3d 516, 517-18 (7th Cir. 2004) ("Persons whose legal interests are at stake are appropriate intervenors, so we grant Indeck-Elwood's motion"); *New Mexico Dep't of Human Servs. V. Dep't of Health and Human Services Health Care Fin. Admin.*, 4 F.3d 882, 884 n. 2 (10th Cir. 1993) ("[G]iven intervenor's substantial and unique interest in the outcome . . . we would reaffirm the decision to permit intervention"); *Bales v. Nat'l Labor Relations Bd.*, 914 F.2d 92, 94 (6th Cir. 1990) ("Because Carrier has a substantial interest in the outcome of the petition, the Court granted its petition to intervene pursuant to Fed. R. App. P. 15(d)."); *Yakima Valley Cablevision, Inc. v. Fed. Commc'n. Cmm'n.*, 794 F.2d 737, 744-45 (D.C. Cir. 1986) ("[B]ecause petitioners have been directly affected by an application of the forbearance policy . . . we will permit them to intervene . . ."). Indeed, even before Rule 15(d), the Supreme Court recognized the need to permit intervention by interested parties when a court of appeals reviews the decision of the National Labor Relations Board. *See United Auto., Aerospace and Agric. Implement Workers of Am, Local 283 v. Socfield*, 86 S.Ct. 373 (1965) ("Congress has exhibited a concern that interested

7

private parties be given a right to intervene and participate in the review proceedings involving the specified agency and its orders.").[2]

Kinder Morgan has a direct and substantial legal and practical interest in the outcome of this appeal.

First, the underlying issue is who will perform the Work for Kinder Morgan at its facility. Who does its Work is of obvious interest to Kinder Morgan. A basis of the Board's 2011 Decision was that "[i]t is undisputed that Kinder Morgan prefers that the work in question be performed by IBEW-represented employees." *See Int'l Bhd. Of Elec. Workers, Local 48 (Kinder Morgan Terminals)*, 357 NLRB 2217, 2220 (2011). Indeed, IBEW workers performed the Work even before Kinder Morgan took over operations. *Id*. at 2217, 2219. The Board also determined that Kinder Morgan's preference was consistent with the fact IBEW workers' relevant skills, training, and certifications exceed those of ILWU-represented workers. *See*

---

[2] The specific holding in *Scofield* permits automatic intervention by successful charging and charged parties. 382 U.S. at 208. Here, although Kinder Morgan was not directly a charging or charged party, because the complaint was filed by the NLRB General Counsel against Petitioners, the matter is predicated, among other misconduct, on Petitioner's continued grievances against Kinder Morgan. Kinder Morgan has thus effectively become a successful charged party. Moreover, the outcome of this appeal directly impacts the vitality of the Board's 2011 Decision, in which Kinder Morgan was the charging party. The same efficiency and fairness concerns that underlay the *Scofield* decision support intervention here. *Id*. at 209-17. Indeed, the Court's recognition that NLRA §10(f)'s allowance of aggrieved parties to petition for review "does not require an unnecessary duplication of proceedings," but rather "[t]he aim of the Act is to attain simplicity and directness both in the administrative procedure and on judicial review." *Id.* at 211.

*Int'l Bhd. Of Elec. Workers, Local 48 (Kinder Morgan Terminals)*, 357 NLRB at 2220.

Second, the Board's 2019 Decision is premised on and reinforces the 2011 Decision that (should have) finally resolved the jurisdictional dispute as to which union's members should perform the Work. The 2011 Decision was based in part on: Kinder Morgan's preference for using IBEW workers for the Work; the fact the IBEW workers were more qualified to perform the Work than the ILWU workers; and the fact using IBEW workers for the Work is more efficient. In short, this appeal puts at issue the continuing vitality of the 2011 Decision, and the determination of the issues decided therein. *Int'l Bhd. Of Elec. Workers, Local 48 (Kinder Morgan Terminals)*, 357 NLRB at 2220-21.

Third, in large part, the coercive activities that are the subject of this case consist of six grievances filed in 2010 against Kinder Morgan by Petitioners. The Board found Petitioners continued to pursue those grievances, and enforcement of an arbitration award entered against Kinder Morgan regarding the grievances, despite the intervening 2011 Decision that the Work belonged to IBEW. *Int'l Bhd. of Elec. Workers, Local 48 (Kinder Morgan Terminals)*, 357 NLRB at 2220. Kinder Morgan has an obvious interest in the 2019 Decision's finding in favor of Kinder Morgan regarding the grievances brought against it by Petitioners.

Fourth, the Decision has a direct impact on Kinder Morgan because the relief ordered specifically includes: prohibiting Petitioner from specified actions that have the object of forcing Kinder Morgan to assign the Work to Petitioner; prohibiting Petitioner from specified actions that have the object of forcing Kinder Morgan to stop doing business with Accurate Electric of Oregon, Inc. (which employed the IBEW, Local 48 workers Kinder Morgan previously used to perform the Work); prohibiting Petitioner from pursuing six grievances filed and an arbitration award to obtain the Work; requiring Petitioner to withdraw its six grievances against Kinder Morgan; requiring Petitioner to request the Area Arbitrator vacate her award against Kinder Morgan; and requiring Petitioner to provide notices that may be posted by Kinder Morgan informing employees that Petitioner has been prohibited from pursuing the Work as set forth above.

Because it has a direct and substantial interest in the case, Kinder Morgan's Rule 15(d) motion for leave to intervene should be granted.

B.     Federal Rule of Civil Procedure 24 guides appellate intervention where there is no direct petition for review of agency action under FRAP 15(a).

Even when an appellate case does not involve a Rule 15(a) petition for direct appellate review of an agency order, and Rule 15(d) intervention is therefore unavailable, appellate courts may nonetheless permit intervention pursuant to Federal Rule of Civil Procedure 24. *See, e.g., Day v. Apoliona*, 505 F.3d 963 (9th

Cir. 2007); *Bates v. Jones*, 127 F.3d 870 (9th Cir. 1997). In this case, Kinder Morgan also meets the standards for intervention pursuant to Rule 24.

Rule 24 permissive intervention requires only that the intervenor have "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The Board's 2019 Decision, by finding that the 2011 Decision already determined the Work belongs to IBEW members, disposes of Petitioners' grievances against Kinder Morgan which falsely alleged the Work should have been performed by Petitioners' members. Thus, Kinder Morgan certainly has a defense to the grievances that shares with this case a common question of law and fact.[3]

Kinder Morgan is also entitled to intervene under Rule 24(a)(2)'s criteria for intervention by right. This Circuit holds that intervention by right requires demonstration of four things: (1) that the application is timely; (2) that the applicant has a significant protectable interest relating to the subject of the action; (3) that disposition of the action may, as a practical matter, impair or impede the applicant's

---

[3] This Court has also held that permissive intervention requires a timely motion and an independent ground for jurisdiction. *See Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712 F.3d 1349, 1353 (9th Cir. 2013). This motion is timely, being filed within the time provided by Fed. R. App. 15(d). The requirement for independent jurisdiction is not applied in cases where, as here, "the proposed intervenor in a federal-question case brings no new claims." *Ctr. for Biological Diversity v. Zinke*, No. CV-18-00047-TUC-JGZ, 2018 WL 3497081, *4 (D. Ariz. July 18, 2018). Furthermore, because this appeal has just begun, there would be no undue delay or prejudice from the proposed intervention. *See* Fed. R. Civ. P. 24(b)(3).

ability to protect its interest; and (4) that existing parties may not adequately represent the applicant's interest. *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011).

In evaluating whether the requirements are met, this Court follows "practical and equitable considerations" and construes "the Rule broadly in favor of proposed intervenors." *Wilderness Soc. V. U.S. Forest Serv.*, 630 F.33d 1173, 1179 (9th Cir. 2011). (internal punctuation and citation omitted)." The reason for broad construction of mandatory intervention is that it "serves both efficient resolution of issues and broadened access to the court." *Id.* "We follow the guidance of Rule 24 advisory committee notes that state that if an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (internal punctuation and citation omitted). The requirements for intervention by right under Fed. R. Civ. P. 24(a)(2) are easily met by Kinder Morgan.

First, by rule, Kinder Morgan's application is timely filed because it is filed within 30 days of the Petition for Review. Fed. R. App. P. 15(d).

Second, as set forth above, Kinder Morgan has a significant protectable interest in this case. "[T]he 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with

efficiency and due process." *Wilderness Soc.*, 630 F.3d at 1179 (internal punctuation and citation omitted). The requirement is met "if resolution of the . . . claims will affect the applicant for intervention." *Cal. Dump Truck Owners Ass'n. v. Nichols*, 275 F.R.D. 303 (E.D. Cal. 2011) (citing *Montana v. U.S. Envtl. Prot. Agency*, 137 F.3d 1135, 1141-42 (9th Cir. 1998)). The Board decision, and thus this appeal, directly impact whether Kinder Morgan may use IBEW workers to perform the Work at its facility. The case also directly impacts the disposition of Petitioners' grievances against Kinder Morgan, which allege Petitioners' members should have performed the Work and thus are entitled to wages even though IBEW members actually performed the Work. Furthermore, the 2019 Decision orders Petitioners to cease and desist from coercive activities aimed at forcing Kinder Morgan to allow Petitioners' members to perform the Work.

Third, the disposition of the action may, as a practical matter, impede Kinder Morgan's ability to protect its interest. This Court interprets this requirement as satisfied if a determination would substantially affect the applicant for intervention. *Citizens for Balanced Use*, 647 F.3d at 898. The 2019 Decision is what stands between Petitioners, their grievances against Kinder Morgan, and their coercive activities, on the one hand, and Kinder Morgan on the other hand. An unfavorable disposition of the action will obviously impede Kinder Morgan's ability to protect

its interest in determining who performs the Work for it at its facility, to defend against the grievances, and to prevent coercive activities against it.

Fourth, "[t]he burden of showing inadequacy of representation is minimal and satisfied if the applicant that representation of its interests 'may' be inadequate." *Citizens for Balanced Use*, 647 F.3d at 898; *accord Southwest Ctr. for Biological Diversity*, 268 F.3d at 823 (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10 (1972)). "Any doubt" "should be resolved in favor of intervention." *California Dump Truck Owners Ass'n.*, 275 F.R.D. at 307 (citing *Fed. Sav. & Loan Ins. Corp., v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993)). The court considers whether the interest of a present party is such "it will undoubtedly make all of a proposed intervenor's arguments," whether the present party is capable and willing to make such arguments, and whether the intervenor would offer any elements that the others would neglect." *Citizens for Balanced Use*, 647 F.3d at 898. "The most important factor in assessing the adequacy of representation is how the (proposed intervenor's) interest compares with the interests of existing parties." *Id.*

The Board's 2019 Decision, its general role as a federal agency, and its specific refusal to take a position regarding an available argument demonstrates that the Board may not adequately represent all of Kinder Morgan's interests here. Although both the Board and Kinder Morgan generally both want the 2019 Decision

14

affirmed, a federal agency like the Board must take a broader view than the particular interest of a proposed intervenor in a particular case. *Citizens for Balanced Use*, 647 F.3d at 899 ("the government's representation of the public interest may not be identical to the individual parochial interest of a particular group just because both entities occupy the same posture in litigation."); *Center for Biological Diversity*, 2018 WL 3497081, * 4 ("The Ninth Circuit has acknowledged that a federal agency . .. is required to represent a broader view than the more, narrow, parochial interests" of a proposed intervenor).

Here, the Board's primary focus has been the general principle of preserving the priority and dispositive force of its own precedent. *See*, e.g., *Int'l Longshore and Warehouse Union*, Local 4, 267 NLRB No. 64, p. 3 ("[I]t is well settled that a party to a Board 10(k) proceeding cannot relitigate the Board's ultimate work assignment in a subsequent 8(b)(4)(ii)(D) case."). Indeed, even the Board's rejection of the ALJ's findings viewed them through the prism of its 2011 Decision. *See, e.g. Id*. at p. 5 ("[W]e find nothing in the record before us that calls into question the Board's conclusion in the 10(k) proceedings.").

Moreover, the record shows that the Board will not "undoubtedly" make all available arguments. To the contrary, the Board has already specifically refused to address in its Decision an additional argument that the General Counsel made against Petitioners' claim for the Work: that Kinder Morgan could not have assigned the

15

Work to Petitioners because it lacked the control to do so in that such an assignment would have violated Washington State electrical law. *Id*. at p. 5 and n. 10.

Kinder Morgan's primary interest, on the other hand, is in resolving who does the Work, ending the grievances, and preventing coercive activities against Kinder Morgan and its contractors. "While [the Board] ha[s] an interest in upholding [its] process, [Kinder Morgan] has an interest in how [this case] affects [its legal rights and business operations]." *Center for Biological Diversity*, 2018 WL 3497081 at *4. Moreover, "even if [the Board] and [Kinder Morgan] have the same goal in this litigation, there is no guarantee that [the Board] will not change or adjust its policy or position during the course of litigation." *Id.*

## CONCLUSION

Kinder Morgan Terminals has a direct and substantial interest in this appeal, the disposition of which will determine who does its Work and which will dispose of the grievances and other coercive activities used by Petitioners. Accordingly, Kinder Morgan's Motion for Leave to Intervene should be granted.

Respectfully submitted,

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, PLLC

By: /s/ David L. Schenberg
    David L. Schenberg
    Timothy A. Garnett
    7700 Bonhomme Avenue, Suite 650
    St. Louis, Missouri 63105
    Telephone: 314.802.3935
    Facsimile: 314.802.3936

Attorneys for Kinder Morgan Terminals

## Certificate of Compliance

This motion complies with the type-volume limitations of Fed. R. App. P. 27(d)(2)(A) because it contains 3,984 words.

This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionately spaced typeface using Microsoft Word in 14 point, Times New Roman font.

This Brief has been formatted as a .PDF using Adobe 10.0, and has been scanned and to the best of my knowledge is virus free.

/s/ David L. Schenberg
Attorney for Kinder Morgan
Transport Terminals

## **Certificate of Service**

I hereby certify that the above and foregoing document has been filed with the Clerk of the Court by submitting one original and three copies via FedEx overnight and by serving one copy via first class U.S. mail upon the following participants on this 4th day of March, 2019:

| | |
|---|---|
| Eleanor I. Morton<br>Lindsay R. Nicholas<br>Leonard Carder, LLP<br>1188 Franklin Street, Suite 201<br>San Francisco, CA 94109<br><br>Attorneys for International Longshore and Warehouse Union and International Longshore and Warehouse Union, Local 4 | Linda Dreeben<br>David Habenstreit<br>National Labor Relations Board<br>Division of Enforcement Litigation<br>1015 Half Street SE<br>Washington, DC 20570-0001<br><br>Attorneys for National Labor Relations Board |

                                        /s/ David L. Schenberg
                                        Attorney for Kinder Morgan Transport Terminals

37550008.3